MCCARTNEY DALLMANN LLP
Andrew Dallmann, State Bar No. 206771
23187 La Cadena Dr.
Suite 102
Laguna Hills, California, 92653
Phone: (951) 678-2267
Email: Andrew@mdllplaw.com

Attorney for Plaintiff
VENKEE COMMUNICATIONS, LLC

# IN THE UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VENKEE COMMUNICATIONS, LLC,<br><br>Plaintiff,<br><br>vs.<br><br>UBIQUITI NETWORKS, INC.,<br><br>Defendant | Case No.: _____<br><br>To be supplied by the Clerk of<br>The United States District Court<br><br>**COMPLAINT** |

Plaintiff VenKee Communications, LLC ("Plaintiff" or "VenKee") hereby brings this Complaint seeking damages and other relief for patent infringement, and demanding trial by jury, and alleges as follows:

## THE PARTIES

1. VenKee is a Texas limited liability company having a principal place of business at 5068 West Plano Parkway, Suite 300, Plano, Texas 75093.

2. On information and belief, Defendant Ubiquiti Networks, Inc. ("Ubiquity") is a corporation organized and existing under the laws of Delaware that maintains a principal place of business at 606 E Chapman Ave FL 2, Orange, CA, 92866. Ubiquiti has a registered agent for service of process at Corporation Service Company, 251 Little Falls Drive, Wilmington, DE, 19808.

COMPLAINT - 1

**JURISDICTION AND VENUE**

3. This action arises under the patent laws of the United States, Title 35 of the United States Code, 35 U.S.C. § 271 et seq. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 1338(a).

4. The Court has general and specific personal jurisdiction over Defendant because Defendant resides in this District at 606 E Chapman Ave FL 2, Orange, CA, 92866, and it conducts substantial business in the forum, directly and/or through intermediaries, including: (i) at least a portion of the infringing activity alleged herein; and (ii) regularly doing or soliciting business, engaging in other persistent courses of conduct and/or deriving substantial revenue from goods and services provided to persons in this District.

5. Plaintiff's cause of action arises, at least in part, from Defendant's contacts with and activities in this District.

6. Defendant, directly and/or through intermediaries, imports, makes, uses, sells, offers for sale, ships, distributes, advertises, promotes, and/or otherwise commercializes infringing products in this District and elsewhere. Defendant regularly conducts and solicits business in, engages in other persistent courses of conduct in, and/or derives substantial revenue from goods and services provided to residents of this District and elsewhere.

7. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and (c), and 1400(b) because Defendant resides in this District at 606 E Chapman Ave FL 2, Orange, CA, 92866.

**THE PATENT-IN-SUIT**

8. U.S. Patent 7,916,684 entitled "Wireless Communication Network Providing Communication Between Mobile Devices and Access Points" was duly and lawfully issued by the U.S. Patent and Trademark Office on March 29, 2011 from Application No. 10/985,589, filed on November 11, 2004. A true and correct copy of U.S. Patent 7,916,684 as issued is attached hereto as **Exhibit A**.

9. U.S. Patent 7,916,684 was subsequently the subject of three ex parte reexaminations, including Ex Parte Reexamination 90/013,324 (the "'324 Reexam"). Ex Parte Reexamination takes a fresh look at the novelty and non-obviousness of all the subject patent claims without presuming validity. As of September 30, 2018, less than 15,000 of the approximately 10,000,000 U.S. patents issued over time have ever been reexamined. *See* https://www.uspto.gov/sites/default/files/documents/ex_parte_historical_stats_roll_up.pdf (last accessed January 30, 2020). VenKee's Patent was therefore subject to more extensive and robust examination than usual.

10. Following these years of additional examination, the Reexamination Certificate for the '324 Reexam was duly and lawfully issued by the U.S. Patent and Trademark Office on January 8, 2016. A true and correct copy of the '324 Reexam Certification is attached hereto as **Exhibit B** and reflects the final patent claims including all three reexaminations.

11. By and through the ex parte reexaminations, claims 1, 6, 7, 13 and 19 of U.S. Patent 7,916,684 were determined to be patentable as amended, and claims 5, 11, 17 and 20, which each depend from an amended claim, were determined to be patentable. *See* **Exhibit B**, Col. 1:15-18. Claims 2-4, 8-10, 12, 14-16 and 18 were not reexamined. Id., Col. 1:19. U.S. Patent 7,916,684 and the '324 Reexam Certificate are referred to collectively herein as "the '684 Patent."

12. The '684 Patent is directed to a wireless communication network that includes a plurality of access points configured as local access points that operate at one of a set of frequencies and within a communication range. The local access points may communicate with a mobile device within the local access point communication range. The wireless network further includes an access point configured as a master access point to communicate with each of the local access points at a frequency that is outside the set of frequencies of the local access points.

13. The '684 Patent identifies and addresses problems in the prior art. Specifically, the '684 Patent teaches that, in prior art networks, "the effective throughput of the network is

substantially reduced as the user's message travels over multiple 'hops' to get to the wired backhaul" and that "the effective network data rate drops rapidly as the number of hops increases." **Exhibit A**, Col. 1:43-48.

14. The '684 Patent further identifies prior art problems including a "lack of frequency planning and channel allocation to separate the bandwidth of the AP-mobile messages and the backhaul messages between access points that carry the message back to the wired network." **Exhibit A**, Col. 1:48-51.

15. The '684 Patent further identifies prior art problems including that "each access point has a single radio that is used to communicate with both the mobile users and the other access points in the network. The lack of available bandwidth for backhaul and frequency planning greatly limits the scalability of this mesh network architecture. As the mesh network is implemented over larger areas, a larger percentage of the total capacity (e.g., backhaul/mobile capacity) is used to transmit updates to the network routing status." **Exhibit A**, Col. 1:52-59. The '684 Patent teaches technical solutions to these prior art problems, including using an "access point configured as a master access point to communicate with each of the plurality of local access points at a frequency that is outside the set of frequencies of the local access points." **Exhibit A**, Col. 2:7-9.

16. The '684 Patent further teaches the technical solution of "having a master communication channel that is distinct from the local communication channels." **Exhibit A**, Col. 2:16-19.

17. The '684 Patent further teaches the technical solution including "a first communication device (e.g., a first radio) corresponding to each of the local access points to communicate between the local access points and mobile devices . . . using the local communication channels" and "a second communication device (e.g., a second radio) corresponding to each of the local access points to communicate between each of the local access points and the master access point . . . using the master communication channel." **Exhibit A**, Col. 2:20-30. The addition of a master access point communicating on a separate frequency

addresses the prior art problems identified by the '684 patent, including regarding network scalability, limited backhaul bandwidth, and effective frequency planning.

18. VenKee is the owner by assignment of all right, title and interest in and to the '684 Patent.

## THE ACCUSED INSTRUMENTALITIES

19. Defendant manufactures, uses, sells, offers for sale and/or imports wireless communication network products, including its Amplifi product line (*e.g.*, the AmpliFi Alien Whole-Home Wi-Fi routers) ("Amplifi") and its UniFi product line (*e.g.*, the WiFi BaseStation XG) ("UniFi"), which are a range of secure wireless access points ("APs") to a WLAN or other network, managed and secured directly via the Amplifi App or the UniFi App (the "Accused Instrumentalities").

20. A combination of Accused Instrumentalities is used to achieve seamless whole home Wi-Fi coverage. Multiple Accused Instrumentalities are combined to form a communication cell.

21. The Accused Instrumentalities use a different set of frequencies to communicate with mobile devices than to communicate with each other.

22. The Accused Instrumentalities include the Amplifi and UniFi AP products, related network infrastructure, and any substantially similar networks and devices.

## COUNT I – INFRINGEMENT OF THE '684 PATENT

23. VenKee repeats and realleges the allegations of all foregoing Paragraphs as if fully set forth herein.

24. Defendant has infringed and continues to infringe one or more claims of the '684 Patent, including at least exemplary claim 7, by making, using, selling and/or offering for sale, and importing within this District and elsewhere in the United States, the Accused Instrumentalities.

25. Claim 7 of the '684 Patent recites:

7. A communications cell for a wireless network using a common wireless communications protocol comprising:

    (a)    a plurality of local access points, each local access point being configured to communicate with a mobile device within a respective wireless coverage area using the common wireless communications protocol and at a respective frequency from among a set of local access point frequencies; and

    (b)    a master access point configured to

    (c)    simultaneously communicate with a mobile device within a respective wireless coverage area using the common wireless communications protocol and at a respective frequency from among the set of local access point frequencies,

    (d)    communicate with each local access point also using the common wireless communications protocol and at a frequency different from the set of frequencies of the set of local access point frequencies, and

    (e)    provide either a wired or wireless backhaul communications link wherein each of the local access points comprises a first radio and a second radio, the first radio configured to communicate with the mobile device and the second radio configured to communicate simultaneously with the master access point, and each of the first radios is configured at a different frequency within the set of local access point frequencies and each of the second radios is configured at the frequency different from the set of local access point frequencies,

    (f)    wherein simultaneous wireless communication occurs between (i) mobile devices and local access points, and (ii) local access points and the master access point using the different frequencies,

    (g)    wherein said communications cell comprises one of a plurality of communications cells in a wireless network using the common wireless communications protocol, and each communications cell having a master access point, wherein said master access points of the plurality of communications cells have alternating wired and wireless backhaul communications links.

26. Defendant infringes exemplary claim 7 by its Amplifi and UniFi AP products including, for example, the BaseStation XG, which is configured as a multiple access point wireless network that is managed centrally and uses common wireless communications protocols, such as 802.11 wireless protocols (*see* **Exhibit C**, UniFi BaseStation Datasheet) and comprises a mesh network where:

(a) Multiple UniFi APs are combined to form a communication cell. One UniFi AP acts as a "primary" (master), while others are configured as secondary APs. Each of the UniFi APs can communicate with a mobile client device using a frequency in the 2.4 GHz frequency band or thee 5GHz frequency band according to the 802.11 wireless protocols. **Exhibit C, Exhibit D**.

(b) When multiple UniFi APs are combined to form a communication cell, they are connected in a mesh network, where one of the UniFi AP acts as a primary (master) AP while others are configured as secondary APs. **Exhibit D, Exhibit E**.

(c) The primary UniFi AP can communicate with mobile client devices that exist within the wireless coverage over, for example, the 2.4 GHz frequency spectrum. The 2.4 GHz frequency spectrum (2.412 GHz – 2.462 GHz) represents a set of local access point frequencies. Each UniFi AP (primary and secondaries) is able to simultaneously communicate with mobile clients and other mesh access points. *See Id.*

(d) The primary UniFi AP can communicate with other mesh access points over a dedicated frequency in, for example, the 5 GHz frequency spectrum using the 802.11 wireless protocols. The 5 GHz frequency spectrum includes frequencies (5.745 GHz – 5.825 GHz) that are different from frequencies in the 2.4 GHz frequency spectrum (2.412 GHz – 2.462 GHz). Each mesh access point is able to simultaneously communicate with mobile clients using a frequency in, for example, the 2.4 GHz frequency spectrum and other mesh access points using the dedicated frequency in, for example, the 5 GHz frequency spectrum. *See id.* The backhaul frequency of the UniFi APs can be changed. **Exhibit F**, *Changing the MeshPoint's Backhaul Frequency*.

(e) Each UniFi AP comprises a first radio that can be configured to communicate with users over, for example, the 2.4 GHz frequency spectrum band, and the second radio can be configured to communicate with the other UniFi AP over, for example, the 5 GHz frequency spectrum band. The two radios in the Unifi AP are configured to be able to communicate simultaneously with the mobile client devices and the other mesh routers. Therefore, each UniFi AP is able to simultaneously communicate with mobile clients and other Unifi APs. **Exhibit E**, **Exhibit F**. UniFi APs can be added to a mesh network wirelessly or via ethernet backhaul. *Id.*

(f) The secondary Unifi AP can simultaneously communicate with mobile devices using, for example, the 2.4 GHz frequency band and with the primary UniFi AP using, for example, the 5 GHz frequency band. *Id.*, **Exhibit F**.

(g) UniFi APs are capable of simultaneous dual band and tri band communications. **Exhibit C**. UniFi APs allow the configuration of multiple concurrently operating networks. **Exhibit H**, *Configuring SSIDs*. UniFi APs can be configured in multiple cells (networks), where cell 1 includes a primary and a plurality of secondaries, and cell 2 also includes a primary and a plurality of secondaries. Cell 1 and Cell 2 both use the 802.11 wireless protocols. In cell 1, the primary AP can include a wired backhaul communication link with other secondary APs, and in cell 2, the primary AP can include a wireless backhaul communication link to secondary APs. **Exhibit E**, **Exhibit G**, *Ubiquiti's Unifi Dream Machine and Amplifi Alien*.

27. The foregoing structure, function and operation of the Accused Instrumentalities meets all limitations of at least exemplary claim 7 of the '684 Patent.

28. Defendant's acts of making, using, selling, offering for sale and/or importing the Accused Instrumentalities are without VenKee's license or authorization.

29. Defendant's unauthorized actions therefore constitute direct infringement of VenKee's exclusive rights pursuant to 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, and VenKee is entitled to recover from Defendant the damages sustained as a result of Defendant's infringement of the '684 Patent in an amount to be determined at trial, which

amount shall be no less than a reasonable royalty, together with interest and costs as fixed by this Court pursuant to 35 U.S.C. § 284.

30. Defendant has had actual knowledge of the '684 Patent since at least the service of this Complaint.

31. At least as early as the service of this Complaint, Defendant indirectly infringes the '684 Patent within the United States by inducement under 35 U.S.C. §271(b). By failing to cease making, using, selling, importing, or offering for sale the Accused Instrumentalities at least as of the service of this Complaint, Defendant has knowingly and intentionally induced users of the Accused Instrumentalities to directly infringe one or more claims of the '684 Patent, including, by: (1) providing instructions or information, for example on its publicly available website, to explain how to use the Accused Instrumentalities, including the use of the Accused Instrumentalities in manners described above, which are expressly incorporated herein; and (2) touting these uses of the Accused Instrumentalities in advertisements, including but not limited to, those on its website. Use of the Accused Instrumentalities in the manner intended and/or instructed by Defendant necessarily infringes the '684 Patent.

32. At least as of the service of this Complaint, Defendant also indirectly infringes the '684 Patent within the United States by contributory infringement under 35 U.S.C. §271(c). Defendant is aware, at least as of the service of this Complaint, that components of the Accused Instrumentalities are a material and substantial part of the inventions claimed by the '684 Patent, and are designed for a use that is both patented and infringing, and have no substantial non-infringing uses. By failing to cease making, using, selling, importing, or offering for sale the Accused Instrumentalities (and components thereof) at least as of the service of this Complaint, Defendant has knowingly and intentionally contributed to direct infringement by its customers of one or more claims of the '684 Patent, including, by: (1) providing instructions or information, for example on its publicly available website, to explain how to use the Accused Instrumentalities, including the use of the Accused Instrumentalities in manners described above, which are expressly incorporated herein; and (2) touting these uses of the Accused

Instrumentalities in advertisements, including but not limited to, those on its website. Use of the Accused Instrumentalities in the manner intended by Defendant necessarily infringes the '684 Patent.

33. Defendant's infringement of the '684 Patent has injured VenKee and VenKee is entitled to recover damages from Defendant (or any successor entity to Defendant).

## JURY DEMAND

VenKee hereby demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff VenKee Communications, LLC requests that this Court enter judgment against Defendant and any other entity by and through which Defendant make, sell, use, offer for sale or import, or have made, sold, used, offered for sale or imported infringing Accused Instrumentalities as follows:

A. Adjudicating, declaring and entering judgment that Defendant has directly infringed the '684 Patent either literally or under the doctrine of equivalents;

B. Adjudicating, declaring and entering judgment that Defendant has induced infringement and continues to induce infringement of one or more claims of the '684 Patent;

C. Adjudicating, declaring and entering judgment that Defendant has contributed to and continue to contribute to infringement of one or more claims of the '684 Patent;

D. Awarding damages to be paid by Defendant adequate to compensate VenKee for Defendant's past infringement of the '684 Patent and any continuing or future infringement through the date such judgment is entered, including interest, costs, expenses and an accounting of all infringing acts including, but not limited to, those acts not presented at trial;

E. Awarding VenKee pre-judgment and post-judgment interest; and

F. Awarding VenKee such other and further relief at law or in equity as this Court deems just and proper.

| | | |
|---|---|---|
| 1 | Dated: June 7, 2021 | /s/ Andrew S. Dallmann |
| 2 | | Andrew S. Dallmann |
| | | McCartney Dallmann LLP |
| 3 | | 23187 La Cadena Dr. |
| | | Suite 102 |
| 4 | | Laguna Hills, California  92653 |
| 5 | | Phone: (951) 678-2267 |
| | | Email: Andrew@mdllplaw.com |

Attorney for Plaintiff
VENKEE COMMUNICATIONS, LLC

**Of Counsel:**
Cecil E. Key (*pro hac vice to be filed*)
Jay P. Kesan (*pro hac vice to be filed*)
Henning Schmidt (*pro hac vice to be filed*)
DIMUROGINSBERG, P.C.
1101 King St., Suite 610
Alexandria, Virginia 22314
Phone: (703) 684-4333
Fax:     (703) 548-3181
Email: ckey@dimuro.com
           jkesan@dimuro.com
           HSchmidt@dimuro.com

Attorneys for Plaintiff
VENKEE COMMUNICATIONS, LLC.