UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 21-1009 PSG (DFMx) | Date | May 23, 2022 |
|---|---|---|---|
| Title | Venkee Communications, LLC v. Ubiquiti Networks, Inc. | | |

| Present: The Honorable | Philip S. Gutierrez, United States District Judge | |
|---|---|---|
| Wendy Hernandez | | Not Reported |
| Deputy Clerk | | Court Reporter |
| Attorneys Present for Plaintiff(s): | | Attorneys Present for Defendant(s): |
| Not Present | | Not Present |

**Proceedings (In Chambers):** The Court CONSTRUES the disputed claim terms as stated herein

On June 7, 2021, Plaintiff VenKee Communications, LLC ("Plaintiff") filed suit against Defendant Ubiquiti Networks, Inc. ("Defendant") for patent infringement. *See generally* Dkt. # 1. Plaintiff alleges that Defendant manufactures, uses, sells, offers for sale and/or imports wireless communication network products that offer secure wireless access points (e.g., AmpliFi Alien Whole-Home Wi-Fi routers and the UniFi product line) that infringe at least Claim 7 of U.S. Patent No. 8,402,684 ("the '684 Patent"). *See First Amended Complaint*, Dkt. # 39 ("*FAC*"), ¶¶ 19–22, 24–26.

Before the Court are the parties' disputed claim terms for construction. On March 18, 2022, the parties filed their Joint Claim Construction Prehearing Statement ("JCCPS"). *See generally* Dkt. # 41 ("*JCCPS*"). On April 14, 2022, the parties filed opening claim construction briefs. *See generally* Dkt. # 46 ("*Def. Opening Br.*"); Dkt. # 47 ("*Pl. Opening Br.*"). On April 29, 2022, the parties filed responsive claim construction briefs. *See generally* Dkt. # 50 ("*Pl. Response Br.*"); Dkt. # 51 ("*Def. Response Br.*").

The Court finds this matter appropriate for decision without oral argument. Having considered the JCCPS and the parties' opening and responsive claim construction briefs, the Court **CONSTRUES** the disputed claim terms as stated herein.

I. Background

This patent infringement action relates to wireless communication networks. Plaintiff owns the right, title, and interest in the '684 Patent, entitled "Wireless Communication Network Providing Communication Between Mobile Devices and Access Points." *FAC* ¶¶ 8, 12;

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 21-1009 PSG (DFMx) | Date | May 23, 2022 |
|---|---|---|---|
| Title | Venkee Communications, LLC v. Ubiquiti Networks, Inc. | | |

*see also id.* Ex. A ("*'684 Patent*"). The invention was motivated by the increased use of broadband wireless networks, which are "typically configured having wireless access points, sometimes referred to as hot-spots, that each provide a wireless communication range of typically about 100 meters." *'684 Patent* 1:15–17. In turn, the "wireless access points are connected to a wired network." *Id.* 1:17–18. Because of the limited range of each access point, this configuration required "many high speed wired network connections, often referred to as a backhaul, for each access point." *Id.* 1:28–30. This configuration increased the costs and complexity of wireless networks. *Id.* 1:30–32.

Thus, networks were "developed having a mesh configuration to address the backhaul issue." *Id.* 1:34–35. "In this mesh configuration, each of the access points and/or nodes in the network can communicate information between adjacent or neighboring access points and/or nodes, thus providing a form of wireless backhaul for the network." *Id.* 1:35–39. In such mesh networks, "a message from a mobile user can 'hop' from one access point to another access point until it reaches a wired backhaul connection." *Id.* 1:39–42. This configuration requires fewer wired access points. *Id.* 1:42–43. But with all the "hops" needed to reach the wired backhaul, "effective throughput" across the network is limited—i.e., it slows down data transfer. *Id.* 1:42–46.

The applicants sought to address this problem through "frequency planning and channel allocation to separate the bandwidth of the AP-mobile messages and the backhaul messages between access points that carry the message back to the wired network." *Id.* 1:48–51. Thus, the patent disclosed a wireless network with a plurality of access points where the access points operate as local access points "that are each configured to operate at one of a set of frequencies and within a communication range." *Id.* 1:66–2:3. Thus, mobile devices can communicate with local access points on one frequency, and a master access point communicates with the local access points on a different frequency. *Id.* 2:3–9. This "wireless network architecture provides micro and macro-frequency planning that allows the network to be scaled to cover large areas with minimal or no loss in throughput." *Id.* 3:51–53.

"In various embodiments, all of the local access points in one communication cell use a single backhaul frequency that may form an element of a backhaul macro-communication cell as shown in FIG. 4." *Id.* 4:62–65; *see also id.* 2:53–56 (Figure 4 depicts "a block diagram of a backhaul macro-communication cell including a plurality of communication cells").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 21-1009 PSG (DFMx) | Date | May 23, 2022 |
|---|---|---|---|
| Title | Venkee Communications, LLC v. Ubiquiti Networks, Inc. | | |



FIG. 4

*See id.*, Fig. 4.

The operative first amended complaint alleges that Defendant directly infringes at least Claim 7 of the '684 Patent by making, using, selling, offering for sale, and importing its wireless communication network products in the United States without Plaintiff's authorization. *FAC* ¶¶ 19, 24, 28–29. Claim 7 of the '684 Patent is directed to:

[a] communications cell for a wireless network using a common wireless communications protocol comprising: (a) **a plurality of local access points**, each local access point being **configured to** communicate with a mobile device within a respective wireless coverage area . . . ; and (b) **a master access point configured to** [among other requirements] (c) simultaneously communicate with a mobile device within a respective wireless coverage area . . . (d) communicate with each local access point . . . , and (e) **provide either a wired or wireless backhaul communications link** . . . (g) wherein said communications cell comprises one of a plurality of communications cells in a wireless network using the common

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 21-1009 PSG (DFMx) | Date | May 23, 2022 |
|---|---|---|---|
| Title | Venkee Communications, LLC v. Ubiquiti Networks, Inc. | | |

wireless communications protocol, and each communications cell having a master access point, **wherein said master access points** of the plurality of communications cells **have alternating wired and wireless backhaul communications links**.

*See FAC* ¶ 25 (quoting Claim 7) (emphasis added to show disputed claim terms). Plaintiff offers several exhibits in support of its contentions, including documents showing the reexamination history of the '684 Patent. *See id.* ¶¶ 26, 29 & Exs. C–I.

II. Legal Standard

"The purpose of claim construction is to 'determin[e] the meaning and scope of the patent claims asserted to be infringed.'" *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1360 (Fed. Cir. 2008) (quoting *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996)). The Supreme Court has held that claim construction is a matter of law "exclusively within the province of the court." *Markman*, 517 U.S. at 372. "That is so even where the construction of a term of art has 'evidentiary underpinnings.'" *Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 574 U.S. 318, 321 (2015) (quoting *Markman*, 517 U.S. at 390).

When construing claim terms, a court must first "look to the words of the claims themselves . . . to define the scope of the patent invention." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). Words of the claims are "generally given their ordinary and customary meaning," which is the meaning they "would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312–13 (Fed. Cir. 2005) (en banc) (citation omitted).

However, a claim term should be construed "not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." *Id.* at 1313. The specification is "the single best guide to the meaning of a disputed term," and the court should "rely heavily" on it for guidance. *Id.* at 1315, 1317.

Further, a court should consider the patent's prosecution history—the complete record of the proceedings before the United States Patent and Trademark Office ("PTO") and the prior art cited during the patent's examination—because it "provides evidence of how the PTO and the inventor understood the patent." *Id.* at 1317. "[B]ecause the prosecution history represents an

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 21-1009 PSG (DFMx) | Date | May 23, 2022 |
|---|---|---|---|
| Title | Venkee Communications, LLC v. Ubiquiti Networks, Inc. | | |

ongoing negotiation between the PTO and the applicant, rather than the final product of that negotiation, it often lacks the clarity of the specification and thus is less useful for claim construction purposes." *Id.*

Lastly, although less significant than the intrinsic record, courts may "rely on extrinsic evidence, which 'consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises.'" *Id.* (quoting *Markman*, 52 F.3d at 980). "Extrinsic evidence may be useful to the court, but it is unlikely to result in a reliable interpretation of patent claim scope unless considered in the context of the intrinsic evidence." *Id.* at 1319.

Any party seeking to invalidate a claim as indefinite under 35 U.S.C. § 112, ¶ 2 must show by clear and convincing evidence that one skilled in the art would not understand the scope of the claim with reasonable certainty when read in light of the specification. *Intellectual Prop. Dev., Inc. v. UA–Columbia Cablevision of Westchester, Inc.*, 336 F.3d 1308, 1319 (Fed. Cir. 2003).

III. <u>Discussion</u>

    A. <u>Agreed Constructions</u>

Plaintiff currently asserts Claims 1, 4, 5, 7, 10, 11, 13, 16, 17, 19, and 20. *See JCCPS* 2:5–6. The parties propose one claim term with an agreed construction.

| Claim Term | Parties' Agreed Construction |
|---|---|
| "a plurality of communication cells" (Claims 1, 7, 13, 19) | "two or more communication cells" |

*See id.* 2:8–10.

The Court accepts the parties' agreed construction, which binds them. *See MyMail, Ltd. v. Am. Online, Inc.*, 476 F.3d 1372, 1377–78 (Fed. Cir. 2007) (rejecting appellate challenge to claim construction agreed to by party in district court).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 21-1009 PSG (DFMx) | Date | May 23, 2022 |
|---|---|---|---|
| Title | Venkee Communications, LLC v. Ubiquiti Networks, Inc. | | |

  B.  Disputed Terms

  The parties present four disputed terms for construction. The Court addresses in turn each disputed term.

      i.  "master access point . . . configured to . . . provide either a wired or wireless backhaul communication link" (Claims 1, 7, 13, 19)

| Term | Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|---|
| "master access point . . . configured to . . . provide either a wired or wireless backhaul communication link"<br><br>(Claims 1, 7, 13, 19) | Plain and ordinary meaning | "[master access point . . . configured to . . . provide] either a wired or wireless communications link between the master access point and the central backbone network"<br><br>**OR**<br>Indefinite |

  The parties dispute whether the "backhaul communications link" refers to the upstream communications link between the master access point and the central backbone network only (Defendant's position), or whether it can also include the downstream communications links between the master access point and the local access points (Plaintiff's position). *See Pl. Opening Br.* 3–4; *Def. Opening Br.* 6–7.

  This limitation appears in several claims. It requires:

> a master access point positioned within the given communications cell and configured to simultaneously communicate with a mobile device within a respective wireless coverage area of the given communications cell . . . , [and] each local access point within the given communications cell . . . [;] and provide either a wired or wireless backhaul communications link.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 21-1009 PSG (DFMx) | Date | May 23, 2022 |
|---|---|---|---|
| Title | Venkee Communications, LLC v. Ubiquiti Networks, Inc. | | |

*See, e.g.*, *'684 Patent* 2:5–17 (Ex Parte Reexamination Certificate). Additionally, each "communications cell comprises one of a plurality of communications cells in a wireless network using the common wireless communications protocol, and each communications cell ha[s] a master access point, wherein said master access points of the plurality of communications cells have alternating wired and wireless backhaul communications links." *Id.* 2:28–35.

Plaintiff argues this limitation is "neither highly technical nor hard to understand" for a person of ordinary skill in the art ("POSA"). *Pl. Opening Br.* 3:11–13. Plaintiff states that numerous references and figures in the '684 Patent make clear "the structure, function, and operation of the claimed master access point." *Id.* 3:14–20 (citing *'684 Patent* 2:6–19). Thus, Plaintiff argues that no construction is necessary. *Id.* 3:20. Further, Plaintiff observes that the specification contains no clear disavowal or lexicography regarding "backhaul communications link," and thus nothing from the specification should be read to limit the plain and ordinary meaning of this term. *Id.* 4:2–24. Plaintiff also argues that the extrinsic evidence submitted by Defendant supports plain and ordinary meaning. *Id.* 4:25–5:12.

Defendant argues that its proposed construction—requiring a wired or wireless communication links *between the master access point and the central backbone network*—is supported by the specification, which "refers to the 'master access point' almost exclusively as the wired 'backhaul access point' to the high-speed network." *Def. Opening Br.* 7:1–18 (citing *'684 Patent* 4:33–36, 5:4–13). Defendant argues that only "a single throwaway sentence" near the end of the specification suggests otherwise. *Id.* 7:19–25. That is, Defendant observes "[t]he specification mentions that, 'although each of the master access points **62**, which may define *a backhaul access point, are described having a wired backhaul connection*, variations may be provided, such as, for example, having alternating wired and wireless connections.'" *Id.* 7:21–24 (citing *'648 Patent* 6:43–47) (emphasis added). Defendant argues that the takeaway of this passage should be that "backhaul connections" means connected to the high-speed network rather than connected to wireless "hops" between the local and master access points. *Id.* 7:25–8:2. Defendant argues that both the claim language and extrinsic evidence referring to backhaul support its construction. *Id.* 8:3–9:20.

If its construction is not adopted, Defendant argues in the alternative that the limitation is indefinite because, "[i]f the term 'backhaul communications link' could refer to either the northbound connection between the master access point and the central network or the southbound connections between the master access point and local access points, a POSITA would not know the scope of the claims with reasonable certain[t]y." *Id.* 9:21–10:9; *see also Def. Response Br.* 1:8 ("What 'link' is it referring to?").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 21-1009 PSG (DFMx) | Date | May 23, 2022 |
|---|---|---|---|
| Title | Venkee Communications, LLC v. Ubiquiti Networks, Inc. | | |

In response, Plaintiff argues that "backhaul communications link" refers to both links "between the secondary and master access points." *Pl. Response Br.* 2:7–4:3 (citing *'684 Patent* 1:34–43) ("In this mesh configuration, each of the access points and/or nodes in the network can communicate information between adjacent or neighboring access points and/or nodes, thus providing a form of wireless backhaul for the network."). Further, Plaintiff argues that the patent "defines the backhaul communications links as any links used for backhaul, *i.e.*, any communications links using the backhaul frequency on a distinct 'master communication [*i.e.*, backhaul] channel.'" *Id.* 3:3–5 (citing *'684 Patent* 2:6–19).

Further, Plaintiff notes that the specification refers to "wired backhaul connection" when necessary, implying the existence of wireless backhaul connections. *Id.* 4:6–11 (citing *'684 Patent* 1:39–42) ("In this mesh network, a message from a mobile user can 'hop' from one access point to another access point until it reaches a wired backhaul connection."). Even if "a wired or wireless backhaul communications link" refers to "a wireless backhaul communications link between master access point and the outside network," Plaintiff argues this "does not preclude or even address the wireless backhaul communications links between the master access point and the neighboring local access points." *Id.* 5:7–11. Plaintiff also argues that "[t]he mere reference to a common wireless protocol is not a clear disavowal of a wired mesh connection," i.e., the local access points may be wired to the master access point. *Id.* 6:9–11.

In response to Defendant's indefiniteness argument, Plaintiff argues "just because a term may be read to cover more than one embodiment does not make it indefinite so long as the embodiments are taught by the specification." *Id.* 6:23–26.

Defendant responds that the reexamination proceedings support its proposed construction. *Def. Response Br.* 2:5–13. Specifically, Defendant argues that "to overcome the prior art, the patentees changed ["provide a wired backhaul communications link"] to: " . . . provide either a wired or wireless backhaul communications link . . . .'" *Id.* 2:5–7. Thus, Defendant concludes that "the patentees simply added the possibility of having a wireless backhaul link to the outside network rather than just wired as in the original claim." *Id.* 2:7–9; *see also '684 Patent* 6:43–47 ("[E]ach of the master access points . . . are described having a wired backhaul connection."). Defendant explains that, if Plaintiff's construction were correct, it "would read out the addition of the phrase 'alternating wired and wireless backhaul' to overcome prior art during reexamination," because including both the wireless "hop" and the wired connection between the master access point and the central network would make this addition superfluous. *Id.* 3:6–15.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 21-1009 PSG (DFMx) | Date | May 23, 2022 |
|---|---|---|---|
| Title | Venkee Communications, LLC v. Ubiquiti Networks, Inc. | | |

The Court observes that, in substance, each party argues for plain and ordinary meaning, but the parties dispute that meaning. Although the Court agrees that plain and ordinary meaning applies (i.e., there is no disavowal or inventor lexicography), the Court must resolve the parties' underlying dispute. *See, e.g.*, *O2 Micro Int'l Ltd.*, 521 F.3d at 1361 ("A determination that a claim term 'needs no construction' or has the 'plain and ordinary meaning' may be inadequate when a term has more than one 'ordinary' meaning or when reliance on a term's 'ordinary' meaning does not resolve the parties' dispute."); *NobelBiz, Inc. v. Glob. Connect, L.L.C.*, 701 F. App'x 994, 997 (Fed. Cir. 2017) (district court has responsibility to determine the scope of disputed claims; ruling "plain and ordinary meaning" may be insufficient).

The Court agrees with Defendant that Plaintiff's proposed plain and ordinary meaning would render superfluous the amendments made to overcome prior art during the reexamination proceedings. *See Intel Corp. v. Qualcomm Inc.*, 21 F.4th 801, 810 (Fed. Cir. 2021) ("It is highly disfavored to construe terms in a way that renders them void, meaningless, or superfluous.") (citation omitted). In the original claims, the master access point was configured to "provide a wired backhaul communications link." *See '684 Patent* 8:19. In the reexamined claims, the master access point is configured to "provide *either* a wired or wireless backhaul communications link." *See id.* 2:15–16 (Reexamination Certificate) (emphasis added); *see also id.* 2:28–35 ("[S]aid communications cell comprises one of a plurality of communications cells in a wireless network using the common wireless communications protocol, and each communications cell having a master access point, wherein said master access points of the plurality of communications cells have alternating wired and wireless backhaul communications links.").

If "backhaul communications link" referred to all links within the claimed network (i.e., including the wireless links between the local access points and the master access point, *and* the link between master access point and the outside network), there would have been no need to specify "*either* a wired or wireless" backhaul communications link. Thus, when read in context with the remaining claim language, a POSA would understand "backhaul communications link" to refer to the link between the claimed wireless network and the outside network (e.g., the Internet).

The specification supports this conclusion. First, the specification teaches that "high speed wired network connections [are] often referred to as a backhaul." *'684 Patent* 1:29–30. Second, the specification explains, "although each of the master access points **62**, which may define a backhaul access point, are described having a wired backhaul connection," for this invention, "variations may be provided, such as . . . having alternating wired and wireless

Case 8:21-cv-01009-PSG-DFM Document 52 Filed 05/23/22 Page 10 of 19 Page ID #:672

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 21-1009 PSG (DFMx) | Date | May 23, 2022 |
|---|---|---|---|
| Title | Venkee Communications, LLC v. Ubiquiti Networks, Inc. | | |

connections." *Id.* 6:43–47. Thus, the applicants understood—and stated as much—that "backhaul access point" typically refers to a wired connection to the network, but in the claimed configuration, it can include variations such as alternating wired and wireless connections. The reexamined claim language was amended to be consistent with this explanation.

The Court finds no support in the claim language or specification for Plaintiff's contention that the local access points in the claimed wireless network may be wired to the master access point. The local access points are "configured to use the common wireless communications protocol" and the invention sought to improve data transfer over wireless networks, not to add wires. Indeed, the specification teaches away from adding wired connections. *See id.* 1:30–34 ("The increased number of wired connections increases the cost and complexity of such wireless networks, and sometime does not provide a practical implementation.").

Construing "backhaul communications link" as recited in the claims to be limited to the connection between the master access point and the outside network does not undermine the specification's use of other backhaul-related terms such as "backhaul network." The specification teaches that mesh networks "address the backhaul issue" by allowing "each of the access points and/or nodes in the network [to] communicate information between adjacent or neighboring access points and/or nodes [through wireless "hops"], thus providing a form of wireless backhaul for the network." *Id.* 1:36–39. This demonstrates a difference between the so-called "wireless backhaul" within the wireless network, i.e., how wireless networks sought to improve range and transmission issues, and the traditional "backhaul communications link" to the outside network recited in the claims.

Accordingly, the Court construes this term to have its plain and ordinary meaning, clarifying that "backhaul communications link," when read in the context of the '648 Patent, means the connection between the master access point and the outside network. Because the intrinsic evidence makes this clear, the Court need not resort to the extrinsic evidence supplied by Defendant; but even if the Court reached that evidence, it would support this construction as well.

This construction renders Defendant's indefiniteness argument moot, so the Court does not reach this argument.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 21-1009 PSG (DFMx) | Date | May 23, 2022 |
|---|---|---|---|
| Title | Venkee Communications, LLC v. Ubiquiti Networks, Inc. | | |

        ii.      *"wherein said master access points . . . have alternating wired and wireless backhaul communications links" (Claims 1, 7, 13, 19)*

| Term | Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|---|
| "wherein said master access points . . . have alternating wired and wireless backhaul communications links"<br><br>(Claims 1, 7, 13, 19) | Plain and ordinary meaning | Indefinite<br><br>(and "backhaul communications links" means "communications links between the master access point and the central backbone network") |

      In addition to disputing the meaning of "backhaul communications links," which the Court resolved above, this dispute centers on the meaning of "alternating."

      Plaintiff argues the specification "describes both wired and wireless backhaul," so "alternating" "simply means that the invention utilizes both, such as for example a wired backhaul communications link followed by a wireless backhaul communications link, or a wireless backhaul communications link followed by a wired backhaul communications link." *Pl. Opening Br.* 6:16–19. Plaintiff argues this conclusion is supported by Defendant's extrinsic evidence, and nothing supports by clear and convincing evidence that a POSA would not understand this term with reasonable certainty. *Id.* 6:19–27.

      Defendant argues that a POSA would be unable to understand this term, which was added during reexamination, and so it is indefinite. *Def. Opening Br.* 10:20–26. Specifically, Defendant argues that this claim limitation raises the following questions:

      (1) does it mean that each master access point in a cell ha[s] multiple alternating backhaul links to the central network?; (2) does each master access point in a cell have one backhaul link to the central network, and the type of connection alternates among each cell?; (3) does each master access point have multiple backhaul links to local access points that alternate their type?; or (4) does each cell have only one kind of backhaul links between master access and local access point, and whether they are wired or wireless alternates between cells?

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 21-1009 PSG (DFMx) | Date | May 23, 2022 |
|---|---|---|---|
| Title | Venkee Communications, LLC v. Ubiquiti Networks, Inc. | | |

*Id.* 11:7–13. Although "alternating" usually means, "switching in sequence," Defendant argues that it makes no sense here because "the claimed communication cell network is, by its very nature, not a sequential arrangement of master access points." *Id.* 11:14–23. Rather, the embodiments in the Figures show a tessellating pattern. *Id.* 11:24–26.

Plaintiff responds that "the term alternating in this context is described in the '684 Patent: 'although each of the master access points **62**, which may define a backhaul access point, are described having a wired backhaul connection, variations may be provided, such as, for example, having alternating wired and wireless connections.'" *Pl. Response Br.* 8:11–14 (quoting *'684 Patent* 6:43–47). Plaintiff contends that this example "does not preclude various configurations," however; for example, "a master access point with multiple connections to the outside network may have both wired and wireless backhaul connections to the outside network." *Id.* 8:17–19.

Defendant responds that "the single sentence in the specification that uses the word 'alternating' provides no explanation for the meaning of this word." *Def. Response Br.* 4:14–15. Defendant argues that replacing "alternating" with "followed by," as Plaintiff seems to suggest, would not fix the ambiguity because it leaves open the questions recited above. *Id.* 4:22–5:15.

This claim limitation appears in several claims in the context of "plurality of communications cells," each with its own master access point; in that context, it recites, "wherein said master access points of the plurality of communications cells have alternating wired and wireless backhaul communications links." *'684 Patent* 1:57–60.

The Court finds that Defendant has not carried its burden by clear and convincing evidence to show that this limitation is indefinite. First, Defendant supports its indefiniteness contention with attorney argument only, which is not persuasive. Second, in the context of the patent, a POSA would be able to understand "have alternating wired and wireless" backhaul communications links with reasonable certainty. *See Intellectual Prop. Dev.*, 336 F.3d at 1319.

The Court clarified the plain and ordinary meaning of "backhaul communications links" above, so this dispute turns on whether a POSA would understand the master access points of the plurality of communications cells "have alternating wired and wireless" connections between the master access point and the outside network. When read in context, "alternating" refers to moving between the plurality of communications cells, and it connotes that each communication cell must have at least a wired or wireless connection to the outside network. *See, e.g.*, *'684 Patent* 6:43–47 ("[A]lthough each of the master access points **62**, which may define a backhaul

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 21-1009 PSG (DFMx) | Date | May 23, 2022 |
|---|---|---|---|
| Title | Venkee Communications, LLC v. Ubiquiti Networks, Inc. | | |

access point, are described having a wired backhaul connection, variations may be provided, such as, for example, having alternating wired and wireless connections." (i.e., although typically a wired connection, a connection between a master access point and the outside network can be wired or wireless). Because this plain and ordinary meaning is clear from the claim language when read in light of the specification, the Court need not resort to extrinsic evidence to understand this term.

Accordingly, the Court rules that this term is not indefinite and a POSA would understand the disputed portion of this term "have alternating wired and wireless" as "have either a wired or wireless" connection to the outside network.

### iii. "configured to" (Claims 1, 7, 13, 19)

| Term | Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|---|
| "configured to" (Claims 1, 7, 13, 19) | Plain and ordinary meaning | "actually programmed or implemented in hardware to, not merely capable of being configured to" |

This term is used across several claim limitations, e.g., "a plurality of communications cells configured to use the common wireless communications protocol"; "each local access point being configured to communicate with a mobile device"; and "the first radio configured to communicate with the mobile device and the second radio configured to communicate simultaneously with the master access point." The parties dispute whether "configured to" requires a construction.

Plaintiff argues that no construction is required because the specification "provides sufficient explanation of the structure, function, and operation of the claimed term." *Pl. Opening Br.* 7:5–12 (citing *'684 Patent* 2:1–3 ("local access points [] are each configured to operate at one of a set of frequencies and within a communication range") and *id.* 2:23–24 ("communication devices are configured to communicate using the local communication channels")). Further, Plaintiff argues that the claim language itself provides "all of the pertinent detail" regarding this limitation. *Id.* 7:16–22. Plaintiff notes that courts often decline to construe this term. *See id.* 7:23–8:18 (collecting cases).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 21-1009 PSG (DFMx) | Date | May 23, 2022 |
|---|---|---|---|
| Title | Venkee Communications, LLC v. Ubiquiti Networks, Inc. | | |

Defendant argues this term would be confusing to a jury because it is unclear "whether the term conveys a mere possible implementation or on the other hand a specific and intentional implementation created in every instance." *Def. Opening Br.* 13:14–18. Defendant argues that its proposed construction "best captures the plain and ordinary meaning of this term." *Id.* 13:18–21. This is because, Defendant argues, the claim language relates to actual implementation, and the specification describes "the required architectural arrangement of the invention." *Id.* 13:22–15:7.

In response, Plaintiff argues that Defendant's proposed construction "seeks to add limitations that are not actually found in the claim language." *Pl. Response Br.* 10:4–12. Further, Plaintiff argues that the term "is used only to define the capability of the communications cells, the local access point, and the master access point individually, it does not convey how these are arranged relative to each other, nor the "architectural structure" of the claimed wireless network." *Id.* 10:21–25.

Defendant responds that the invention does not claim "any of the wireless access points themselves," and if the claims are so construed, they would "cover a wireless access point that is never arranged in this particular way [and thus] would capture the prior art wireless access points used in mesh networks that the '684 Patent criticizes." *Def. Response Br.* 7:13–18.

The Court agrees with Plaintiff that no construction is required for "configured to"; plain and ordinary meaning applies. Both the surrounding claim language and the specification provide ample context for the plain and ordinary meaning of this term without the need for further construction. The Court disagrees with Defendant that declining to construe this term would result in the claims covering the wireless access points themselves. The claim language does not sweep so broadly, and no construction is required to clarify that or to provide clarity to a jury.

Further, the Court finds *Nevro Corp. v. Boston Scientific Corp.*, 955 F.3d 35, 40 (Fed. Cir. 2020), a case on which Defendant relies, unhelpful. In *Nevro Corp.*, the district court held that "configured to" was indefinite because it was susceptible to two meanings. *See id.* at 41. The Federal Circuit reversed because that is not the test for indefiniteness. *Id.* Additionally, in the context of the claim language, which disclosed "a signal generator configured to generate a therapy signal having a frequency of 10 kHz, an amplitude up to 6 mA, and pluses having a pulse width between 30 microseconds and 35 microseconds," the court ruled that "a signal generator configured to generate" means "a signal generator programmed to generate." *Id.* This is because "[t]he asserted claims contemplate that 'configured to' requires programming the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 21-1009 PSG (DFMx) | Date | May 23, 2022 |
|---|---|---|---|
| Title | Venkee Communications, LLC v. Ubiquiti Networks, Inc. | | |

signal generator (i.e., setting parameters)" such as a "therapy signal is at a frequency of 10 kHz," among others. *Id.*

In this case, various components must be "configured to" do certain things (e.g., "use the common wireless communications protocol," "communicate with a mobile device," and "communicate simultaneously with the master access point"), but the asserted claims do not contain specific "parameters" (e.g., 10 kHz) like in *Nevro Corp*. This is further illustrated by the fact that dependent Claim 6 discloses at least one specific parameter, "[t]he wireless network in accordance with claim 1 wherein the common communications protocol comprises the IEEE 802.16 protocol." *See '684 Patent*, Claim 6. That is, the relevant network components must be configured to operate on the WiMAX protocol. *See '684 Patent* 4:22–29.

For these reasons, the Court declines to construe "configured to."

iv. *"a plurality of local access points" (Claims 1, 7, 13, 19)*

| Term | Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|---|
| "a plurality of local access points"<br><br>(Claims 1, 7, 13, 19) | Plain and ordinary meaning, i.e., "two or more local access points" | "Two or more local access points (for each cell and master access point)" |

The claimed invention discloses a plurality of communication cells, "each communication cell comprising a plurality of local access points arranged to define a given communications cell." *See, e.g., '684 Patent*, Claim 1. The parties dispute whether the claimed "master access point" can be one of the claimed "plurality of local access points," or whether the claims require a "master access point" plus two or more "local access points."

Plaintiff argues that, because the parties agree that "plurality" means two or more in the context of "a plurality of communication cells," it should have the same meaning here. *Pl. Opening Br.* 9:21–26. But Plaintiff contends that "[t]he explicit claim language requires only 'a plurality of local access points' with no numerical limit and does not preclude the master access point functioning as a local access point as well." *Id.* 10:7–9. Rather, Plaintiff explains that "the claim language supports that the master access point is simply one of the local access points that is configured to function as master." *Id.* 10:9–10. Plaintiff observes that "the specification

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 21-1009 PSG (DFMx) | Date | May 23, 2022 |
|---|---|---|---|
| Title | Venkee Communications, LLC v. Ubiquiti Networks, Inc. | | |

confirms that the master access point, like any other local access point, communicates with mobile devices." *Id.* 10:22–23 (citing *'684 Patent* 2:6–9). Thus, in Plaintiff's view, "the claimed communications cell include[s] a master access point and a plurality of local access points," which "can—in a minimal configuration—comprise only two access points, i.e., two local access points, one of which is configured as a master" access point. *Id.* 11:5–7.

Defendant argues that its proposed construction is needed to "clarif[y] that each communication cell comprises a master access point and a plurality of local access points," i.e., "two or more local access points correspond to each communication cell or master access point." *Def. Opening Br.* 16:21–25. Defendant argues that "[t]he specification repeatedly explains the structural hierarchy in which a wireless communication cell is made up of multiple local access points." *Id.* 17:19–18:14 (citing, e.g., *'684 Patent* 2:10–16 ("a wireless network architecture is provided that includes a plurality of local access points each defining a wireless access coverage area . . . [t]he network architecture also includes a master access point"); *id.* 4:49–52 ("the wireless access coverage areas **54** of the local access points **52** and the master access points **62** define a wireless communication cell **70**"); *id.* 4:53–55 ("[w]ithin the wireless communication cell **70**, and for example, each of the access points (both the local access points **52** and the master access point **62**)"). Further, Defendant argues that, during reexamination, the applicants explained (in the context of Figure 3) that the invention comprises local access points **52** *and* a master access point **62**. *Id.* 18:7–13.

Plaintiff responds that "the plain language of the claims does not exclude the master access point from [also] being a local access point." *Pl. Response Br.* 13:5–6. Plaintiff contends that the claims give "no indication that the 'master' and 'local' access points must be different physical devices." *Id.* 13:7–8. Further, Plaintiff argues both the local and master access points share the same functionality of communicating with a mobile device. *Id.* 13:8–15. Plaintiff relies on the specification to argue that the local and master access points are not mutually exclusive:

> According to an exemplary embodiment, a wireless network is provided that includes a plurality of access points. *A plurality of the access points are configured as local access points* that are each configured to operate at one of a set of frequencies and within a communication range. The local access points may communicate with a mobile device within the corresponding local access point communication range. The wireless network further includes *an access point configured as a master access point* to communicate with each of the plurality of local access points at a frequency that is outside the set of frequencies of the local access points.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 21-1009 PSG (DFMx) | Date | May 23, 2022 |
|---|---|---|---|
| Title | Venkee Communications, LLC v. Ubiquiti Networks, Inc. | | |

*Id.* 13:18–25 (quoting *'684 Patent* 1:66–2:9) (emphasis added in Plaintiff's brief).

Defendant responds that Plaintiff's proposed construction—that a local access point can also be the master access point—violates the rules of claim construction because the claims require "each communication cell comprising . . . a plurality of local access points . . . ***and*** a master access point." *Def. Response Br.* 8:12–22 (quoting *'684 Patent*, Claim 1) (emphasis added). The claims also require that the master access point is "configured to . . . communicate with each local access point within the given communications cell." *Id.* 8:22–24 (quoting *'684 Patent*, Claim 1). Further, Defendant argues that the specification "repeatedly and consistently refers to the communication cell with respect to a master access point in addition to local access ***points***, not a single local access point." *Id.* 9:25–10:10 (citing *'684 Patent* 2:11–17 ("network architecture is provided that includes a plurality of local access points each defining a wireless access coverage area . . . [t]he network architecture also includes a master access point to provide communication between the plurality of local access points"); *id.* 4:34–35 ("the master access point **62** for wirelessly communicating with the local access points **52**")).

The Court applies plain and ordinary meaning to this term. Consistent with the parties' agreed-term-for-construction above, the plain and ordinary meaning of "a plurality of local access points" is two or more local access points. However, this does not resolve the issue. *See O2 Micro Int'l Ltd.*, 521 F.3d at 1361.

The Court resolves the balance of the parties' dispute in Defendant's favor. The plain language of the claims demonstrates that the required local access points are distinct from the master access point. For example, the claimed wireless network requires:

> a plurality of communications cells configured to use the common wireless communications protocol, each communications cell comprising [1] a plurality of local access points arranged to define a given communications cell, each local access point being configured to communicate with a mobile device . . . ***and*** [2] a master access point positioned within the given communications cell and configured to simultaneously communicate with a mobile device . . . , communicate with each local access point within the given communications cell . . . at a frequency different from the set of frequencies of the set of local access point frequencies, and provide either a wired or wireless backhaul communications link.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 21-1009 PSG (DFMx) | Date | May 23, 2022 |
|---|---|---|---|
| Title | Venkee Communications, LLC v. Ubiquiti Networks, Inc. | | |

*See '684 Patent*, Claim 1 (emphasis added). According to the claims, the local access points define the communications cell, ***and*** a separate component, the master access point, is positioned within that communications cell. *See Merck & Co. v. Teva Pharms. USA, Inc.*, 395 F.3d 1364, 1372 (Fed. Cir. 2005) ("A claim construction that gives meaning to all the terms of the claim is preferred over one that does not do so."); *Bicon, Inc. v. Straumann Co.*, 441 F.3d 945, 950 (Fed. Cir. 2006) (patent "claims are interpreted with an eye toward giving effect to all terms in the claim," and "physical structures and characteristics specifically described in a claim" should not be interpreted as "merely superfluous").

The Court finds no support in the claims or specification for Plaintiff's position that the claimed "master access point" may be the same as one of the claimed "plurality of local access points." Thus, plain and ordinary meaning does not support Plaintiff's position. Accordingly, the Court construes "a plurality of local access points" to have plain and ordinary meaning, that is, "two or more local access points," with the clarification that the master access point is distinct from the local access points.

IV.     Conclusion

For the foregoing reasons, the Court **CONSTRUES** the agreed and disputed claim terms as follows:

| Term (Claim No(s).) | Agreed Construction |
|---|---|
| "a plurality of communication cells"<br><br>(Claims 1, 7, 13, 19) | "two or more communication cells" |
| Term (Claim No(s).) | Court's Construction |
| "master access point . . . configured to . . . provide either a wired or wireless backhaul communication link"<br><br>(Claims 1, 7, 13, 19) | Plain and ordinary meaning, with the clarification that "backhaul communications link" means "connection between the master access point and the outside network" |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 21-1009 PSG (DFMx) | Date | May 23, 2022 |
|---|---|---|---|
| Title | Venkee Communications, LLC v. Ubiquiti Networks, Inc. | | |

| | |
|---|---|
| "wherein said master access points . . . have alternating wired and wireless backhaul communications links"<br><br>(Claims 1, 7, 13, 19) | "wherein said master access points . . . have either a wired or wireless connection between the master access point and the outside network" |
| "configured to"<br><br>(Claims 1, 7, 13, 19) | No construction necessary |
| "a plurality of local access points"<br><br>(Claims 1, 7, 13, 19) | Plain and ordinary meaning, i.e., "two or more local access points," with the clarification that the "master access point" is distinct from the "local access points" |

**IT IS SO ORDERED.**